**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-20515-SCOLA/TORRES

| | |
|---|---|
| SAN ANTONIO WINERY, INC.,<br>a California corporation, and Merritt Estate<br>Winery, Inc, a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ENOVATION BRANDS, INC., a Florida<br>corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' EXPEDITED MOTION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED RULING BY FEBRUARY 28, 2020

Plaintiffs San Antonio Winery, Inc. ("San Antonio Winery") and Merritt Estate Winery, Inc. ("Merritt Winery") (collectively "Plaintiffs")  move pursuant to Fed. R. of Civ. P. 65 for a Temporary Restraining Order ("TRO") enjoining Defendant Enovation Brands, Inc. ("Defendant or "Enovation") and its officers, agents, servants, employees, and other persons who are in active concert or participation, including its affiliates, associates and distributors, from:

TEMPORARY RESTRAINING ORDER

A) Importing, selling, shipping, distributing or offering to sell a wine that infringes the STELLA ROSA trade dress for a low alcohol, sparkling or semi-sparkling, sweet or semi-sweet, Italian wine, under the term BELLA ROSA, where the STELLA ROSA trade dress comprises:

(i) a maroon colored screwcap,

(ii) STELLA in black and ROSA in red,

(iii) "ROSSO" under STELLA ROSA,

(iv) a design similar to the San Antonio Winery crown (including the design shown in Exhibit D) above STELLA ROSA,

(v) a design similar to the San Antonio Winery crown (including the design shown in Exhibit D) incorporated into the bottle,

(vi) an off-white label, and

(vii) a pattern of small gold similar to that used on the STELLA ROSA Screwcap (including the design on the label shown in Exhibit D).

B)  Importing, selling, shipping, distributing or offering to sell a wine that infringes the STELLA ROSA trade dress for a low alcohol, sparkling or semi-sparkling, sweet or semi-sweet, Italian wine, under the term BELLA ROSA, where the STELLA ROSA trade dress comprises:

(i) a red colored screwcap,

(ii) STELLA in black and ROSA in red,

(iii) has "Moscato D'Asti" under STELLA ROSA,

(iv) has a design similar to the San Antonio crown (including the design shown in Exhibit D) above STELLA ROSA,

(v) has a design similar to the San Antonio crown (including the design shown in Exhibit D) incorporated into the bottle,

(vi) a pattern of small gold similar to that used on the STELLA ROSA Screwcap (including the design on the label shown in Exhibit D), and

(vii) has a white label.

C)  Importing, selling or offering to sell a wine that is:

(i) labeled BELLA ROSA, and

(ii) lacks another prominent mark.

This expedited motion is made on the grounds set forth in the incorporated Memorandum in Support, and exhibits provided herewith; all pleadings and papers filed in this action; the argument of counsel, if any; and further evidence as the Court may consider at or before a hearing regarding this Motion.  The Complaint for this matter has been served.  In accordance with the Court's February 14, 2020 Order, notice of this expedited motion will be provided in accordance with the certificate of service attached hereto.

## MEMORANDUM OF LAW IN SUPPORT

## I.    STATEMENT IN SUPPORT OF EXPEDITED RULING

Plaintiffs applied for a Temporary Restraining Order on February 10, 2020 seeking substantially the same injunctive relief as requested by this Motion.  The *Ex Parte* application was denied without prejudice in an Order issued on February 12, 2020 (the "Order").   It appears the Court denied Plaintiffs' request for a temporary restraining order (TRO) primarily because the

Court perceives there is enough time to allow Defendant Enovation Brands an opportunity to be heard.

In the Order, the Court stated, "…Enovation doesn't plan to release the allegedly infringing products until early March—almost three weeks away from the filing of their motion and nearly a month from when they filed their complaint. (Pls.' Mot. at 9.)" For clarity, early March is when Plaintiffs are informed and believe the infringing BELLA ROSA wine will be on at least one retail store's shelves, and available to consumers. It will actually be released sooner in that Defendant's infringing product will be shipped to distributors. Accordingly, time is of the essence to avoid damage to the goodwill of both Plaintiffs, lost sales by Plaintiffs, which may not be compensable, and harm to the public based on consumer confusion. Plaintiffs want to keep the infringing product away from consumers.

The Order was also denied because Enovation was not provided notice. In fact, Enovation was provided notice by a copy being emailed on the following morning after the application was filed to Enovation's counsel. See Exhibit M. Plaintiffs have nothing to hide and are not practicing gamesmanship. Based on Local Rule 5.4(d)(1), Plaintiffs did not understand they needed to explicitly say notice was provided in their application. In fact, Plaintiffs provided Enovation's counsel not only with the TRO application and associated papers, but also provided a copy of the Complaint on February 4, 2020.

Plaintiffs then, on February 13, 2020, filed an Expedited Motion for a Preliminary Injunction and Expedited Ruling by February 28, 2020. In its February 14, 2020 order, the Court struck the "extraordinary relief requested" as "not justified." Instead, the Court said, "the better course is for San Antonio Winery to seek a temporary restraining order, with notice to the Defendant and *not on an ex parte basis*, which the Court can consider on an expedited basis, without a full-blown preliminary-injunction hearing," The Court referred Plaintiffs' motion to U.S. Magistrate Judge Edwin G. Torres "for either an order or a report and recommendations...." The Court concluded that if San Antonio Winery desires expeditious injunctive relief, "the more practical way for it to do so is through an expedited or emergency motion for a temporary restraining order." The Court stated, "San Antonio **must immediately file such a motion**. The Court will then afford Defendant Enovation Brands, Inc. the opportunity to file an expedited response and will promptly set the matter for hearing within a few days."

Pursuant to Fed. R. Civ. P. 65(a), once filed, a copy of this motion will be served on Mr.

Richard Guerra, who has recently filed an appearance on behalf of Defendant Enovation pursuant to the certificate of service below.

In view of the imminent expected launch of Defendant's infringing product no later than the beginning of March 2020, which product will be placed side-by-side Plaintiffs' STELLA ROSA product, Plaintiffs respectfully request an Order on this motion issue by February 28, 2020. Given the balance of hardships, this date will protect Plaintiffs' sales and goodwill and will not unduly burden Defendant, who will be allowed to sell its wine, just not by trading on the goodwill of Plaintiffs' or siphoning Plaintiffs' sales.

The remainder of this Motion is essentially the same as application for a Temporary Restraining Order.  Plaintiffs are relying on the Declarations and Exhibits that were submitted with the *Ex Parte* application.  So, Plaintiffs respectfully request the Court reach the merits of this Motion, which provides facts Plaintiffs contend compels issuance of a temporary restraining order.

## II.   INTRODUCTION

Without immediate action from this Court, Plaintiffs, will suffer serious and irreparable adverse commercial effects.  As summarized by Edward Cook,[1] an independent expert with regard to the marketing and sales of wines to consumers:

> If Bella Rosa wine as shown in the Complaint is allowed to be on retailer shelves, and particularly at Target, consumer confusion, and loss of goodwill by San Antonio Winery, are inevitable.  Among the many reasons for (this) opinion are the following:
>
> a.     The strength of the Stella Rosa mark.
>
> b.     The strength of the Stella Rosa trade dress.
>
> c.     The similarities between Bella Rosa and Stella Rosa, differing only in a "B" instead of "ST".
>
> d.     Most consumers do not speak Italian so they will not translate Stella or Bella or Rosa and know the meanings, so the contention by Mr. Aitken that Bella and Stella have different meanings is meritless.
>
> e.     The low price of Stella Rosa wines.
>
> f.     The relative unsophistication of consumers of Stella Rosa wines, and particularly those that shop at Target.
>
> g.     The overlapping channels of commerce.

---

[1] Please note Mr. Cook executed his declaration on February 10, 2020 and not the inadvertent date set forth, February 11, 2020.

      h.     Stella Rosa and Bella Rosa wines are in the same relatively narrow subcategory of wine, both being Italian, low alcohol, fizzy, sweet or semi-sweet wines.

      i.     My comparison of the packaging for the Bella Rosa and Stella Rosa wines leads to the conclusion that there is very clear intent by Enovation to trade on the goodwill of Stella Rosa and divert sales from Stella Rosa to Bella Rosa. I can think of no other explanation for the strong similarities, such as "Bella" and "Stella" being in black and "Rosa" being in red on both labels; both products have a similar emblem within the glass of the bottle in the same location, which is unusual in this category of wine; the emblem is repeated on the label; the labels are the same color; both wines have same color screwcaps; and the decorative pattern used on Stella Rosa wine is mimicked on the Bella Rosa label. I can think of no reason for these similarities other than a blatant attempt to divert sales and trade on the goodwill of Stella Rosa wines. (Cook Decl., ¶18.)

Plaintiffs apply for injunctive relief to prevent the infringement of (i) San Antonio Winery's distinctive trade dress and federally registered trademark, STELLA ROSA®, and (ii) Merritt Winery's BELLA ROSA mark. Plaintiffs also apply for limited expedited discovery with regard to Defendant's intent in copying San Antonio Winery's trade dress, and the quality (or lack thereof) of Defendant's wine.

Defendant Enovation has at least once before attempted to trade on the goodwill associated with another party's famous wine brand. Defendant was sued in 2018 by Jackson Family Wines, Inc. for trademark infringement, of its famous LA CREMA® mark[2].

## III.    SUMMARY OF RELEVANT FACTS

### A.  The Stella Rosa Brand and Trade Dress

San Antonio Winery, Inc. ("San Antonio Winery") is a winery that produces, imports and distributes wine. It is the 2018 American Winery of the Year. It is family-owned and operated with 101 years of continuous winemaking.

One of San Antonio Winery's most recognizable, valuable and famous brands is the STELLA ROSA family of Italian, low-alcohol, sweet or semi-sweet, semi-sparkling, wines. STELLA ROSA wines have won many awards and accolades, including the "Hot Brand" award from Impact magazine each year for the last six years. (Riboli Decl., ¶6.) From 2004 to date, San Antonio Winery used the mark STELLA ROSA in combination with distinctive, unique packaging to identify its wine. STELLA ROSA is the number one imported Italian wine in the United States.

---

[2] See Ex. L and Case No. 2:18-cv-04155-PA-SK; Jackson Family Wines, Inc. and LC TM Holding, LLC v. Enovation Brands, Inc. and Terravant Wine Company, LLC where Plaintiffs allege Trademark Infringement and False Designation of Origin among other claims of their LA CREMA® wine brand. Enovation's frivolous motion to dismiss was easily denied by the Court.

STELLA ROSA is sold in supermarkets and big box stores, such as Costco, and mass retailers such as Target. (Riboli Decl., ¶10.)

San Antonio Winery has multiple federal trademark registrations protecting the STELLA ROSA brand including incontestable U.S. Trademark Registration No. 4,000,417 (the "'417 Registration") for the word mark STELLA ROSA and incontestable U.S. Trademark Registration No. 3,663,013 (the "'013 Registration") for STELLA ROSA and design for use in connection with wine. (Exhibits "A" and "B".) San Antonio Winery also owns Federal Trademark Registrations for ancillary goods and service for STELLA ROSA. (Riboli Decl.¶¶ 14-17.) The STELLA ROSA word mark and the STELLA ROSA and design mark are collectively referred to as the STELLA ROSA Marks.

STELLA ROSA wines have a distinctive trade dress. (Riboli Decl.¶12; Exhibit C.) In particular, San Antonio Winery has used for over 15 years signature distinctive elements to distinguish its "Rosso" and "Moscato D'Asti" STELLA ROSA wines. Below is the trade dress for the STELLA ROSA varietals "Stella Rosso" ("Stella Rosso Trade Dress") and the Stella Rosa Moscato D' Asti ("Stella Rosa Moscato Trade Dress"). (Riboli Decl., ¶¶12-13, Exhibit C.)



Maroon/Gold Screwcap

Red/Gold Screwcap

Small pattern of Gold

Prominent Design on Glass

Product of Italy

Prominent Design above STELLA ROSA same as Design in Glass

**STELLA** (black) **ROSA** (red)

Type of wine under STELLA ROSA

"A Low Alcohol Grape Wine"

"Semi-Sweet"

Label Color

Off White/ White



The Stella Rosso Trade Dress and the Stella Rosa Moscato Trade Dress are collectively referred to as the "Stella Rosa Trade Dress." In the last two years alone, San Antonio spent in excess of $30,000,000.00 in marketing its STELLA ROSA wine brand. For example, STELLA ROSA has been featured multiple times on a float in the nationally televised, world-famous Tournament of Roses Parade, in print advertisements such as in Wine Spectator and Wine Enthusiast, and on over 600 billboards in 42 states, including Florida. (Riboli Decl., ¶19.)

The commercial success of the products and STELLA ROSA's unique marketing and promotional practices have given STELLA ROSA extraordinary, widespread unsolicited media

exposure, building the distinctiveness of the brand.  The article "*Riboli Family Eyes 3-Million-Case Mark For Stella Rosa This Year*" states:

> Stella Rosa jumped nearly 20% to just under 2.5 million  cases in 2019, according to Impact Databank. Since 2016,  **Stella Rosa has nearly doubled in size and become the top imported wine brand by volume in the U.S. market's**  $10 and up segment, with its core range retailing at  $11-$13 a 750-ml. (Emphasis added.) Shanken News Daily, Feb. 5, 2020

(Riboli Decl., ¶43; Exhibit K.)

Between 2015-2019 San Antonio Winery's total sales of wines under the STELLA ROSA Marks has been in excess of $730,000,000.00.  Sales of STELLA ROSA wine in 2019 alone were in excess of $220,000,000.00. Sales of wine with the Stella Rosso Trade Dress and the Stella Rosa Moscato Trade Dress by San Antonio Winery have been in excess of $160,000,000.00 and $80,000,000.00 for 2015-2019, respectively, and sales in 2019 alone were in excess of $39,000,000.00 and $22,000,000.00, respectively.  These wines are among the largest sellers of the STELLA ROSA family of wines. (Riboli Decl., ¶20.)

The presence of the STELLA ROSA Marks and Stella Rosa Trade Dress on San Antonio Winery's goods, on its website and on advertising for its products has resulted in the understanding that wine bearing  the San Antonio Marks and the Stella Rosa Trade Dress originate with, or are provided by, San Antonio Winery.  Thus, the consuming public has come to associate the STELLA ROSA Marks and the Stella Rosa Trade Dress, with wine of high quality.  Thus, the STELLA ROSA Marks and Stella Rosa Trade Dress have attained considerable value and the goodwill associated with them are a valuable business asset. (Riboli Decl., ¶18,21.)

### B.  Merritt Winery's Bella Rosa Trademark

Merritt Winery has been operating a winery in upstate New York since 1976.  In 1984 Merritt Winery began offering a red wine under the name BELLA ROSA.  Over the last three decades BELLA ROSA has been a Merritt Winery best seller and has won numerous prestigious awards including, San Francisco Chronicle Wine Competition, 2018: Silver, and San Francisco Chronicle Wine Competition, 2017: Double Gold. (Merritt Decl., ¶¶1-3.)  Merritt Winery has used the BELLA ROSA mark in commerce to identify its wine. (Merritt Decl., ¶¶ 8-9.)

With its uses spanning over three decades, Merritt Winery's BELLA ROSA trademark has identified its award-winning red wine from others providing the company with strong common

law trademark rights in and to the BELLA ROSA trademark.

### C.  Relationship Between San Antonio Winery and Merritt Winery

San Antonio Winery and Merritt Winery have a coexistence agreement to avoid confusion.  A key term is: "Merritt Winery agrees it will not use a label that is similar to San Antonio Winery's STELLA ROSA labels and will not use BELLA ROSA for a prosecco or similar wine and will include "Merritt Winery" prominently on its label ...." (Riboli Decl., ¶28.)

Thus, unlike Defendant Enovation, Merritt has agreed to limit is use of BELLA ROSA to wines different than STELLA ROSA, and unlike Enovation include "Merritt Winery" prominently on its label; Enovation has no mark other than BELLA ROSA.[3]

### D.  Threat by Enovation

Defendant Enovation has infringed the rights of Plaintiffs by importing its infringing BELLA ROSA wine, and threatens to ship such wine to at least Target.  The following chronology demonstrates that Plaintiffs have acted expeditiously and any potential harm to Enovation by an injunction is to a large degree self-inflicted.

1.  On or about January 10, 2020, San Antonio Winery first learned that Defendant Enovation filed an intent to use trademark application for BELLA ROSA wine. (Riboli Decl., ¶24; Ex. E.)

2.  Shortly thereafter, on January 13, 2020 counsel for San Antonio Winery wrote to counsel (Mr. Andrew C. Aitken) for Enovation Brands expressing concern and asking for information about what Enovation planned to do.  (Riboli Decl., ¶30; Ex. F.)

3.  On January 20, 2020, Mr. Aitken wrote back essentially saying, he would report back substantively.  It never happened before the complaint herein was filed.  Apparently, Enovation intentionally tried to hide the adoption of the Stella Rosa Trade Dress until Enovation could ship product. (Riboli Decl., ¶31; Ex. G.)

4.  By about February 1, 2020, San Antonio learned (i) the type of wine Enovation planned to sell,  namely, the same type as STELLA ROSA, from Italy; (ii) that Target was the ultimate customer, (iii) BELLA ROSA and STELLA ROSA wine would be side-by-side on Target's shelves;  (iv) Enovation wine would be released in early March; (v)

---

[3] Plaintiffs are aware of other potential uses of BELLA ROSA for use in connection with wine. Plaintiffs do not know the extent, if any, of the uses.  San Antonio Winery believes none is for low alcohol wine and none uses any of the elements of the STELLA ROSA trade dress.

the Stella Rosa Trade Dress was being copied; and (vi) the only word mark used on the label was BELLA ROSA. (Riboli Decl., ¶¶ 33, 35-41, Ex. D, Ex. I, Ex. J.)

5. Because Mr. Aitken had not responded substantively for over three weeks, and because San Antonio Winery learned that STELLA ROSA and the Stella Rosa Trade Dress were going to be infringed, on February 4, 2020, Plaintiffs filed the Complaint herein. On that same day, Plaintiffs provided a courtesy copy of the Complaint to Enovation's counsel, and demanded that the BELLA ROSA wine not be sold.  (Riboli Decl., ¶47; Ex. L.)  Defendant has not agreed with Plaintiff's demand.

The following drawings show what is believed to be the BELLA ROSA wines and how the Stella Rosa Trade Dress elements are copied.



Maroon/Gold Screwcap

Prominent Design on Glass

Prominent Design above STELLA
ROSA same as Design in Glass

**BELLA** (black) **ROSA** (red)

Small pattern of Gold

Type of wine under STELLA
ROSA

"A Low Alcohol Grape Wine"

"Semi-Sweet"

Label Color

Off White/ White

Italian Flag



## IV.    LEGAL STANDARD

### A.  Legal Standard for a TRO and Preliminary Injunction

For a temporary restraining order or a preliminary injunction to issue, Plaintiffs must establish the following: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will occur if the injunction is not issued; (3) that the threatened injury to the movant outweighs the potential harm to the opposing party; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); see also *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995)

(applying the test to a preliminary injunction in a Lanham Act case). The factual allegations as detailed below, in the Complaint, and the accompanying declarations demonstrate that all of these factors heavily weigh in the Plaintiffs' favor.

### B. Legal Standard to Have Trade Dress Rights

Generally speaking, "trade dress" means the overall appearance or image of something in commerce.  McCarthy defines trade dress as "… a combination of any elements in which a product or service is presented to the buyer." Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8-3 (4th ed.) *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982); *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763 (1992).

The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004) (quoting *Publ'ns Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 338 (7th Cir. 1998)). "Trade dress is a complex composite of features and the law of unfair competition in respect to trade dress requires that all of the features be considered together, not separately." *Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1141 (3d Cir. 1986) (quoting *SK & F, Co. v. Premo Pharm. Labs.*, 481 F. Supp. 1184, 1187 (D.N.J. 1979)) (internal quotation marks omitted). The features "may include. . . size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *AmBrit, Inc. v. Kraft Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986).

## V.   ARGUMENT

### A.   Plaintiffs Are Highly Likely to Succeed on the Merits on Their False Designation of Origin Claim

If BELLA ROSA wine as shown in the Complaint is allowed to be on retailer shelves, and particularly at Target, as stated by an independent expert, consumer confusion, and loss of goodwill by San Antonio Winery, are inevitable.  (Decl. Cook, ¶ 18).

The Lanham Act provides:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin…which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person. 15 U.S.C. §1125(a).

To prevail on a trademark infringement claim, San Antonio and Merritt Winery each need only show (i) they have a valid, protectable trademark, and (ii) Defendant Enovation has (by importation) and threatens to use a mark confusingly similar to their respective trademarks. *Custom Mfg.*, 508 F.3d at 647 (describing the requirements for a § 1125 claim) *Dieter v. B & H Indus. of Southwest Florida, Inc*., 880 F.2d 322, 326 (11th Cir. 1989) (same for a § 1114 claim). Plaintiffs easily satisfy this standard.

### (i) Plaintiffs Have Valid Protectable Trademarks

Merritt Winery's BELLA ROSA

For thirty-five years before Enovation elected the BELLA ROSA mark, Merritt Winery has used BELLA ROSA in connection with its award winning, best-selling wine throughout the United States. (Merritt Decl., ¶¶ 2-3.) Any use of BELLA ROSA by Enovation without an additional distinctive mark is an infringement of Merritt Winery's trademark rights. "Common-law trademark rights are "`appropriated only through actual prior use in commerce.'" *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193-94 (11th Cir.2001) (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist*., 889 F.2d 1018, 1022 (11th Cir.1989))."

BELLA ROSA in combination with STELLA ROSA Trade Dress

San Antonio Winery's incontestable federal registrations for STELLA ROSA demonstrate that it has a *prima facie* showing that it holds a viable protectable interest in the use of the STELLA ROSA Marks. (Riboli Decl., ¶¶ 14-17, Ex. A; Ex. B.) See *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc*., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act."). The protectability of San Antonio Winery's Stella Rosa Trade Dress rights are supported by the high degree of distinctiveness of the combination of unique, characteristics, both inherent and acquired, in view of the massive sales and marketing efforts.

The combination of over fifteen years of sales, significant marketing expenditures, numerous awards, being the number one imported Italian wine has clearly resulted in the Stella Rosa Trade Dress having acquired distinctiveness. The expert Cook says the Stella Rosa Trade

Dress is very strong.  (Cook Decl., ¶18).  There certainly is nothing functional about the Stella Rosa Trade Dress.

**(ii) Likelihood of Confusion is Cleary Present**

The Eleventh Circuit uses a seven-factor test in determining likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.,* 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in *Safeway Store, Inc. v. Safeway Discount Drugs, Inc*. 675 F.2d 1160 (11th Cir. 1982), are dealt with one-by-one.  Every factor favors Plaintiffs.

**(1) Strength of the Marks.**

The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. *See Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (*See id.*)

<u>Merritt Winery's BELLA ROSA</u>

Plaintiff Merritt Winery's BELLA ROSA mark is a very strong, arbitrary or fanciful.  It has no meaning in English.  If a consumer understands Italian, it can mean "beautiful rose".  The mark is very strong in that Merritt Winery has used the mark in commerce for over thirty-five years selling more than 125,000 bottles in 2019 alone.  (Merritt Decl., ¶¶ 2, 7.)

<u>STELLA ROSA in combination with STELLA ROSA Trade Dress</u>

San Antonio's STELLA ROSA Marks and Stella Rosa Trade Dress are also very strong based on the substantial resources used for developing, advertising, and promoting the STELLA ROSA brand, and the widespread recognition in the industry and with consumers, the very large sales, and that STELLA ROSA is the number one imported Italian wine in the U.S.  (Riboli Decl., ¶19-20, Cook Decl. ¶¶10, 18).  STELLA ROSA has no meaning in English.

**(2) Similarity of the Marks.**

<u>Merritt Winery's BELLA ROSA</u>

Defendant Enovation's BELLA ROSA is identical to Merritt Winery's BELLA ROSA. (Merritt Decl., ¶2.)  Furthermore, Enovation's BELLA ROSA labels LACK any other distinctive terms or marks on the labels such as a winery name. (Merritt Decl., ¶15, Riboli Decl., ¶¶ 36-37.) Likelihood of confusion is greatest when an infringer uses the exact trademark. *Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp.* 2d 1317, 1332 (S.D. Fla. 2004).

<u>BELLA ROSA in combination with STELLA ROSA Trade Dress</u>

Defendant Enovation is attempting to use a mark that is identical to Merritt Winery's BELLA ROSA trademark for identical goods and because it sounds and appears like San Antonio Winery's famous STELLA ROSA Marks. (Riboli Decl., ¶¶ 25,29; Cook Decl.,¶18.)  In addition to using a confusingly similar mark in sight and sound, Defendant Enovation is copying the Stella Rosa Trade Dress for a wine in the exact same subcategory of wines. (Riboli Decl., ¶12-13, ¶36-37, Cook Decl., ¶18.)

| FEATURE | SAN ANTONIO WINERY | ENOVATION BRANDS |
|---|---|---|
| Similar prominent marks | STELLA ROSA | BELLA ROSA |
| Red/Maroon Screwcap | YES | YES |
| Small pattern of gold | YES | YES |
| Similar design in glass above label | YES | YES |
| Similar design in glass above mark on label (for Stella Rosa part of Registration '013 (Exhibit B) | YES | YES |
| STELLA/BELLA same color | YES | YES |
| ROSA same color | YES | YES |
| Label color same | YES | YES |
| Type of wine under mark | YES | YES |
| Location of type of wine directly below the mark | YES | YES |

Moreover, Enovation does not include a distinctive term in combination with BELLA ROSA to try to avoid confusion.

### (3) Similarity of the Goods.

Another important factor in assessing likelihood of confusion is the proximity of the goods. "The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 976 (11th Cir. 1983).

<u>Merritt Winery's BELLA ROSA</u>

Merritt Winery's goods and Defendant Enovation's goods are both wine.

BELLA ROSA in combination with STELLA ROSA Trade Dress

Defendant's wine is intended to exactly replicate Plaintiff San Antonio Winery's STELLA ROSA wine in that it is a sparkling, low alcohol, Italian, sweet or semi- sweet imported wine. (Riboli Decl., ¶¶ 8, 40).  They are in the same wine subcategory.  (Cook Decl., ¶18(h)) This similarity can be held sufficient to establish a likelihood of confusion. *See John H. Harland Co.v. Clarke Checks, Inc. Co.,* 711 F.2d 966, 976 (11th Cir. 1983).

## (4) Similarity of Sales Method and (5) Advertising Method.

Related factors that increases the likelihood of confusion are convergent sales and marketing channels. Convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg Assocs. v. CC Imports, Inc.,* 320 F. Supp. 2d 1317 (S.D. Fla. 2004).

Merritt Winery's BELLA ROSA

Merritt Winery's BELLA ROSA is sold online and if Defendant's wine is sold online both would at least share the commonality of online sales via the internet.  Thus, when a consumer searches BELLA ROSA wine it would find Merritt Winery's BELLA ROSA and Defendant Enovation's BELLA ROSA causing consumer confusion.

BELLA ROSA in combination with STELLA ROSA Trade Dress

The marketing and sales channels cannot be any more aligned than they are in this case. Same retail store, Target®, selling the same type of wine, with confusingly similar names to the same customers (Riboli Decl., ¶39; Cook Decl., ¶18.) Not only will the products both be offered in Target but they will be purposefully positioned side-by-side on store shelves intended to increase the likelihood that consumers will be confused (Riboli Decl. ¶41; Exhibit J; Cook Decl., ¶ 4.)

Thus, the goods for both San Antonio Winery and Defendant are in the same market.

## (6) Defendant's Intent.

This district has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs. Inc. v. C.C. Imports, Inc.*, 320 F. Supp. 2d at 1333, citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.,* 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999).

Merritt Winery's BELLA ROSA

16

If a simple Internet search were done, Merritt Winery's BELLA ROSA would have been first to appear in a search engine.  (Riboli Decl., ¶27, Exhibit H.)  Enovation was put on notice of STELLA ROSA's trademark rights by providing the Complaint filed herein to Enovation's attorney, BEFORE any of its wine has hit the shelves.  If Enovation actually goes forward with knowledge of Merritt Winery's rights, there is intent.

<u>BELLA ROSA in combination with STELLA ROSA Trade Dress</u>

In the instant case, Defendant Enovation had to know about STELLA ROSA and the brands success.  (Riboli Decl., ¶42; Cook Decl., ¶ 18.)  Based on the awards and unsolicited press coverage it is impossible for a company in the wine business not to know about STELLA ROSA.  It is impossible for Enovation to copy the Stella Rosa Trade Dress without knowledge of STELLA ROSA wine.  Here, Defendant has clearly copied Plaintiffs' trademarks, the Stella Rosso Trade Dress, and the Stella Moscato Trade Dress.  It is appropriate, therefore, to infer Defendant intended to benefit from Sant Antonio's reputation, to the detriment of San Antonio. *See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982).  The copying of the Stella Rosso Trade Dress, and the Stella Rosa Moscato Trade Dress can only be the result of intent.  (Cook Decl., ¶ 18(i).)  With regard to intent, Plaintiffs' respectfully request that this Honorable Court also take judicial notice that Defendant has been accused of such unlawful copying tactics in the past attempting to usurp the goodwill of Kendall Jackson's LA CREMA wine.  *See*, infra, note 1.

**(7) Evidence of Actual Confusion.**

Evidence of actual confusion is unavailable at this time because Defendant has yet to launch its BELLA ROSA copy-cat product into the market.  Nevertheless, actual confusion is unnecessary to establish infringement since the test is likelihood of confusion. *Frehling Enters. v. Int'l Select Group, Inc*., 192 F.3d 1330, 1340 (11th Cir. 1999).

<u>Merritt Winery's BELLA ROSA</u>

As mentioned above, once Defendant's product is on the market, when a consumer performs an Internet search for BELLA ROSA wine, both parties' products may appear. Since Defendant Enovation does not have any other distinctive term or mark on its label, there is no way for consumers to know this BELLA ROSA is not Merritt Winery's BELLA ROSA.  Consumer confusion is inevitable.  (Riboli Decl., ¶27, Exhibit H.)

<u>BELLA ROSA in combination with STELLA ROSA Trade Dress</u>

Moreover, San Antonio Winery received the label and packaging information for Defendant Enovation's BELLA ROSA from a competitive distributor, apparently because Defendant Enovation's BELLA ROSA packaging appeared confusingly similar to STELLA ROSA and copies the brand.  (Riboli Decl., ¶12-13, 36-37; Cook Decl., ¶18; Exhibits, D, I.)  This type of evidence at this early stage of the case makes it very likely that Plaintiffs will be able to prove likelihood of confusion at trial.  *Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc*., 706 F. Supp. 855, 859 (S.D. Fla. 1989).

<u>Conclusion as to Likelihood of Confusion and Likelihood of Success</u>

Thus, each of the likelihood of confusion factors weighs only in Plaintiffs' favor. Plaintiffs have therefore shown a probability of success on the merits of their trademark and trade dress infringement claims.

**B.     Plaintiffs Will Suffer Irreparable Injury If Enovation is Not Enjoined.**

The STELLA ROSA brand is a significant portion of San Antonio Winery's business, and the company has invested heavily in this product line and the promotion of the STELLA ROSA Marks.  (Riboli Decl., ¶ 6; Cook Decl., ¶ 14.)   Merritt Winery's BELLA ROSA wine is also its best-selling wine because of decades of hard work and dedication (Merritt Decl., ¶3-7.)  Defendant Enovation's infringement of STELLA ROSA's intellectual property rights and Merritt Winery's trademark will severely harm Plaintiffs' reputations. The confusion is damaging because Defendant Enovation appears to have a reputation in the industry of copying other company's products for its own competitive advantage.  Further, neither Plaintiff is familiar with nor wants to be associated with the quality of wine likely to be offered by Defendant Enovation.

The Eleventh Circuit has stated: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (*citing McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). Where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities, a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this. *Id.*  As demonstrated above, a likelihood of confusion exists because the Defendant has intentionally elected a confusingly similar name and product packaging to confuse consumers.

**C.      The Balance of Hardship Tips Sharply in Plaintiffs' Favor.**

The balance of hardships strongly favors an injunction to prevent Enovation Brands from infringing the unique and distinctive Stella Rosa Trade Dress, STELLA ROSA and BELLA ROSA trademarks.  Absent an injunction, San Antonio Winery will suffer lost sales and diminished goodwill, its reputation is in jeopardy—all due to Defendant Enovation's infringement. Allowing Enovation Brands to use BELLA ROSA will also adversely affect Merritt Winery's trademark rights and potentially causing actual confusion.

Conversely, with an injunction, Defendant Enovation will still be permitted to sell its wine.  It will only be prevented from using a confusingly similar name and packaging. Since the Defendant Enovation BELLA ROSA wine has not yet been distributed, the company has an opportunity to re-label its product without any recall needed.

Moreover, most, if not all harm Enovation may suffer is self-inflicted.  A simple trademark search on the Internet would have revealed Merritt's BELLA ROSSA mark. (Riboli Decl., ¶27; Exhibit H.) Any trademark search would have revealed all the STELLA ROSA registrations.   Furthermore, Defendant Enovation had to know about STELLA ROSA. Copying the STELLA ROSA Trade Dress was intentional.  Defendant Enovation was put on actual notice of San Antonio Winery's potential concern on January 13, 2020.  Nevertheless, while hiding its true intention regarding knocking off the Stella Rosa Trade Dress, Defendant Enovation apparently marches forward trying to get its product to market without letting San Antonio Winery know its trade dress had been copied, and in spite of  knowing Plaintiff San Antonio Winery's strong rights in the STELLA ROSA brand.

**D.      The Relief Sought Serves the Public Interest.**

In the trademark context, the public interest at stake is the right of the public not to be deceived, confused or misled as to the origin, source, or sponsorship of trademarked products. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.,* 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").  Here, the grant of immediate preliminary injunctive relief is necessary to protect consumers from being confused by Defendant's BELLA ROSA branded products. Indeed, the evidence establishes that confusion is likely to occur (Riboli Dec1.,46, 47; Cook Decl.,¶¶ 5,7, 18.)

The Defendant has engaged in unlawful activities and is attempting to intentionally confuse

the consuming public by palming off their wine as associated or affiliated with Plaintiffs.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark.…" 15 U.S.C. § 1116(a).  Plaintiffs seek very narrow relief at this stage of the proceeding as stated in the Proposed Order filed herewith.

**E.     A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Plaintiffs' evidence of infringement, Plaintiffs request this Court to require Plaintiffs to post a bond of ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## VI.     CONCLUSION

Defendant Enovation intends on confusing the public with the introduction of their BELLA ROSA wine, causing irreparable damage to Plaintiffs.   A preliminary injunction would not cause Defendant to suffer any legitimate harm, because the infringing product has yet to reach the market.  Defendant has ample opportunity to modify its packaging to lawfully sell its wine in commerce.  The balance of equities weighs heavily in favor of Plaintiffs and the public interest. In view of the foregoing, Plaintiffs respectfully submit they are entitled a temporary restraining order as to Defendant Enovation Brands, Inc.

Dated: February 14, 2020                    Respectfully Submitted,
                                            CISLO & THOMAS LLP
                                            12100 Wilshire Blvd., Suite 1700
                                            Los Angeles, CA 90025
                                            Tel.: (310) 979-9190
                                            Jeffrey G. Sheldon
                                            E-mail: jshledon@cislo.com
                                            Katherine M. Bond
                                            E-mail: kbond@cislo.com
                                            *(Pro Hac Vice Motions Filed)*

                                            -and-

By: /s/David C. Isaacson
David C. Isaacson, Esq. (FBN 0081691)
E-mail: david@filawyers.com
FITZGERLAD & ISAACSON, LLP
901 Ponce De Leon Blvd., Suite 202
Miami, FL 33134
Telephone (305) 372-7300
Facsimile: (305) 447-0043

*Attorneys for Plaintiffs,*
SAN ANTONIO WINERY, INC. and
MERRITT ESTATE WINERY, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF

notice on February 14, 2020 on all counsel or parties of record on the Service List below.

By: /s/David C. Isaacson___
      David C. Isaacson, Esq.

## SERVICE LIST

The Brickell IP Group, PLLC
Richard Guerra, Esq.
Email: rguerra@brickellip.com
1101 Brickell Avenue
South Tower, Suite 800
Miami, FL 33131
Telephone: 305-728-8831
Facsimile: 305-428-2450