United States District Court
for the
Southern District of Florida

| | |
|---|---|
| San Antonio Winery, Inc. and<br>Merritt Estate Winery, Inc.,<br>Plaintiffs,<br><br>v.<br><br>Enovation Brands, Inc., Defendant. | )<br>)<br>)<br>)  Civil Action No. 20-20515-Civ-Scola<br>)<br>)<br>)<br>) |

## Order Granting, in Part,
## Expedited Motion for Temporary Restraining Order

Plaintiffs San Antonio Winery, Inc. ("San Antonio") and Merritt Estate Winery ("Merritt") (collectively, the "Wineries") seek an expedited ruling on their motion for a temporary restraining order against Defendant Enovation Brands, Inc.'s ("Enovation"), enjoining Enovation from selling wine, the packaging of which the Wineries say infringes the trade dress and marks of their own wines. (Pls.' Mot., ECF No. 19.) Enovation responded in opposition to the Wineries' motion (Def.'s Resp., ECF No. 29) and the Court thereafter heard the parties during oral argument on February 20, 2020. After careful review, the Court **grants in part and denies in part** the Wineries' motion (**ECF No. 19**) for the reasons that follow.

### 1. Factual Background[1]

San Antonio Winery has previously produced and now currently imports, and distributes the Stella Rosa family of Italian, low-alcohol, sweet or semi-sweet, semi-sparkling, wines. San Antonio has multiple federal trademark registrations protecting the Stella Rosa brand including incontestable U.S. Trademark Registration No. 4,000,417 (the "'417 Registration") for the word mark "STELLA ROSA" and incontestable U.S. Trademark Registration No. 3,663,013 (the "'013 Registration") for the mark "STELLA ROSA" and design for use in connection with wine. Stella Rosa wines have won many awards and accolades, including the "Hot Brand" award from Impact magazine each year for the last six years. (Riboli Decl. ¶6, ECF No. 19-3.) From 2004 on, San Antonio has used the Stella Rosa mark in combination with what the Wineries describe as "distinctive, unique packaging to identify its wine." (Pls.' Mot. at 5.)

---

[1] The facts set forth below are based only on the record submitted by the parties thus far and without the benefit of further discovery or the testing of evidence through cross examination. Unless noted, these facts are, at least at this stage of the litigation, undisputed.

The Stella Rosa brand has become the number one imported Italian wine in the United States. (Pls.' Compl. at ¶ 3.) The brand is sold in supermarkets, big box stores—like Costco—and mass retailers—like Target. (Riboli Decl. at ¶10.) In the last two years alone, San Antonio has spent more than $30 million in marketing its Stella Rosa wine brand.

Of concern here are two Stella Rosa wine varietals: "Stella Rosso" and "Moscato D'Asti." Combined, these two varietals had sales of over $60 million in 2019. Enovation, under the name "Bella Rosa," plans to distribute wine through Target that the Wineries believe infringes the trade dress of these two varietals. Depictions of the bottles, side by side with their alleged infringers, are reproduced below.

   

All four offerings are in the same wine subcategory: inexpensive, sparkling, low alcohol, Italian, and sweet or semi-sweet. While the trade dresses exhibit marked differences, notable similarities are also apparent: the word "ROSA" printed in red; the comparable words "STELLA" and "BELLA" printed in black; red or maroon screw caps; gold accents on the screw caps; designs or emblems arranged on the glass directly above the labels; designs or emblems arranged on the labels that mirror the designs or emblems in the glass, directly above the

marks; off-white label backgrounds; and the varietal names printed below the marks.

As for Merritt, it has been operating a winery in upstate New York since 1976. In 1984 it began offering a red wine under the name Bella Rosa. Over the last three decades Bella Rosa has been a Merritt Winery best seller and has won numerous prestigious awards including silver and double gold, in 2018 and 2017, respectively, in the San Francisco Chronicle Wine Competition. In using the Bella Rosa mark, Merritt, by agreement with San Antonio, always includes "Merritt Winery" prominently on its label. Enovation, in contrast, only uses the mark Bella Rosa, without associating it with a particular winery or distributor.

### 2. Legal Standard

To obtain a temporary restraining order, a plaintiff must demonstrate that: (1) it has a substantial likelihood of success on the merits of its claim; (2) it will suffer irreparable injury unless the injunction is issued; (3) the threatened injury to it outweighs the possible injury that the injunction may cause the defendant; and (4) if issued, the injunction would not disserve the public interest. *Keeton v. Anderson-Wiley,* 664 F.3d 865, 868 (11th Cir. 2011).

### 3. Analysis

At this early stage of the litigation, the Court finds, on the limited record before it, that the Wineries have shown (1) they are likely to succeed on the merits of San Antonio's trade dress claims; (2) San Antonio will suffer irreparable injury unless the restraining order is issued; (3) San Antonio's threatened injury outweighs the possible injury that the injunction may cause Enovation; and (4) the relief sought will serve the public interest. On the other hand, the Court is not persuaded that the Wineries have a substantial likelihood of success with respect to Merritt's trademark claim in the Bella Rosa mark.

### A. The Wineries have demonstrated that San Antonio is likely to succeed on the merits of its trade dress claim.

To prevail on San Antonio's trade dress infringement claim, under § 43(a) of the Lanham Act, the Wineries must establish three elements: (1) that San Antonio's trade dress "is inherently distinctive or has acquired secondary meaning," (2) that San Antonio's trade dress "is primarily non-functional," and (3) Enovation's trade dress "is confusingly similar." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986). "'Trade dress' involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). These

features must be considered together and not in isolation. *Id.* (citation omitted). There appears to be no real dispute about the non-functional nature of the Stella Rosa trade dress. The Court therefore focuses only on the first and third elements.

### (1) *Distinctiveness*

Regarding the first element, the Wineries point to Stella Rosa's fifteen years of sales, significant marketing expenditures, numerous awards, and its status as the number one imported Italian wine in the United States in support of its distinctiveness. The Wineries also point out the unique arrangement of elements comprising the trade dress of Stella Rosa's products: the maroon or red screw caps; the gold accents printed on the screw caps; the crown design in the glass, above the bottles' labels; the echo of this crown emblem on the label itself, above the "STELLA ROSA" mark; "STELLA" printed in black; juxtaposed with "ROSA" printed in red; the off-white label color; and the printing of the varietal below the "STELLA ROSA" mark. In opposition, Enovation merely points out that (1) these elements, in isolation, or even in some combination of a subset of them, are shared by dozens or hundreds of other wines and (2) crowns should be considered generic. (Def.'s Resp. at 15.) But "[i]solated or piecemeal third party uses of various elements of [a plaintiff's] trade dress do not detract from the distinctiveness of the overall impression conveyed by the combination of those elements on [a plaintiff's product]." *AmBrit*, 812 F.2d at 1537. That many other wines may share some subset of the characteristics of the Stella Rosa trade dress is not determinative. Rather, it is the unique combination, inclusion, and arrangement of these elements that renders the Stella Rosa dress distinctive. Without more, particularly in light of San Antonio's '417 and '013 federal trademark registrations, Enovation has not overcome the Wineries' showing that San Antonio's trade dress is inherently distinctive.

### (2) *Likelihood of Confusion*

As required by the third element, "[t]he touchstone test for a violation of § 43(a) is the likelihood of confusion resulting from the defendant's adoption of a trade dress similar to the plaintiff's." *Id.* at 1538 (quotations in original omitted). In evaluating the likelihood of confusion, the Eleventh Circuit requires courts to consider seven factors: (1) the strength of the trade dress; (2) the similarity of the trade dress design; (3) the similarity of the goods; (4) the similarity of sales method; (5) the similarity of the marketing method; (6) the defendant's intent; and (7) evidence of actual confusion. *Id.* On balance, the

Court finds the record here indicates these factors tip in favor of a likelihood of confusion.

(a) *Similarity of the Goods, Similarity of the Marketing Method, and Similarity of the Sales Channels*

To begin with, the Court notes there appears to be no real dispute as to the similarity of the competing Stella Rosa and Bella Rosa varietals and the similarities of the marketing and sales channels. The court finds these factors weigh heavily in the Wineries' favor. The Court thus focuses its attention on the remaining four factors.

(b) *Strength of the Trade Dress*

Regarding the first factor, Enovation's arguments as to the strength of the Stella Rosa trade dress overlap its position regarding distinctiveness. And just as the Court found Enovation's assertions in that context unavailing, it finds them equally unpersuasive in this context. To begin with, a "finding of inherent distinctiveness indicates that [a plaintiff's] trade dress will be protected," however, "the appropriate degree of protection is determined by examining a number of factors that establish the standing of the trade dress in the marketplace: most notably, the type of trade dress and the extent of the third party uses." *Id.* at 1539 (citations omitted). In analyzing the scope of protection warranted, a court must first consider the type of trade dress involved: generic, descriptive, suggestive, or arbitrary. *Id.* "[T]he scope of protection increases as the trade dress moves toward the arbitrary end of the spectrum." *Id.* As can be seen from the depictions of the bottles and their labels, a great portion of the elements comprising the Stella Rosa trade dress are arbitrary: the mark "STELLA ROSA" and the crown emblem, as applied to wine, have no real meaning. The word "Rosa" certainly suggests the type of wine (red) for the "Rosso" varietal. However, it is arbitrary as pertains to the "Moscato D'Asti" varietal (which is white). Enovation offers no real opposition to a finding that several of the key elements of the Stella Rosa trade dress are primarily arbitrary. The Court thus finds these elements indicate, at least on this record, a relatively strong, or at least moderately strong, trade dress.

The second consideration in determining the scope of protection warranted is the extent of third-party use. *Id.* On this front, Enovation points to four elements that it says the Wineries claim as comprising its Stella Rosa trade dress: the maroon screw top; the off-white label; the raised insignia on the glass, positioned on the shoulder of the bottle; and red and black lettering. Enovation's argument here is two-fold. First, it contends, these four elements "are shared by dozens or hundreds of wines and therefore can be considered generic." (Def.'s

Resp. at 15.) In support, Enovation relies on its expert who maintains, generally, that "[m]ost or all of the design elements used, alone and in combination can be found [on] many competing wines." (Levitan Decl. ¶ 26, ECF No. 29-1.) Enovation also points to pictures of dozens of wines that use red and black lettering, of various arrangements, on off-white labels, for their wine bottles (Mizrahi Decl. Ex. 6, ECF No. 29-12) and sixteen wines that use raised glass emblems on the shoulders of the bottles (*id.* at Ex. 7, ECF No. 29-13). With perhaps only one or two exceptions, however, the sixty wine bottles depicted do not contain labels where the first word of the mark is printed in black, followed a second word of the mark printed in red. Nor do any of the pictured raised-glass emblems depict an isolated crown like the crown engraved into the Stella Rosa bottles. Indeed, even Enovation's own expert, Bradd Levitan, acknowledges that the "Stella Rosa 'crown' insignia is unique." (Levitan Decl. at ¶ 27.) In sum, Enovation's opposition here is mostly conclusory or supported by weak evidence. Although there is some evidence of third-party use of individual elements of the Stella Rosa trade dress, the Court does not find Enovation's evidence so extensive that it would significantly detract from the scope of protection warranted in this case. *Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev., Inc.*, 824 F. Supp. 1576, 1584 (S.D. Fla. 1993) (Roettger, J.) (finding no diminishment in the plaintiff's mark where the "[d]efendant ha[d] only pointed out that these [third-party] uses exist, but ha[d] not demonstrated that they have [had] any impact on the public's perception regarding the strength of [the p]laintiff's mark").

(c) *Similarity of the Trade Dress Design*

Next, the Court looks to the similarity of the Stella Rosa trade dress as compared to Enovation's Bella Rosa labels. To begin with, the Court notes the striking similarity between Bella Rosa and the Stella Rosa mark. This similarity is only reinforced by the printing of Bella and Stella in black, followed by the printing of Rosa in red. Continuing, both the Bella Rosa and Stella Rosa screw caps of the Rosso varietal are maroon. Both brands have designs in the glass above the labels with that same design replicated in print, just above each mark. Finally, both labels are printed on off-white labels. In opposition, Enovation points to the numerous differences between its products and San Antonio's: for example, the "B" in Bella versus the "St" in Stella; separating the words "Bella" and "Rosa" on two lines versus printing "Stella Rosa" on one line; different logos (the rose design versus the Stella Rosa crown); variations in the cap colors and patterns; different methods of applying the brand's logos to the bottles; the small rose pattern on Enovation's label; the addition of the colors of the Italian flag on Enovation's label; differences in the labels' sizes, shapes, textures, and placements on the bottles; and missing words on Enovation's label. (Def.'s Resp.

at 16–17.) To be sure, the Court recognizes there are significant differences between the two parties' products. But, "[t]he similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *AmBrit*, 812 F.2d at 1540 (quotation omitted). In the end, the similarity of design test, is "really nothing more than a subjective eyeball test." *Id.* (quotation omitted). And here, the Court finds, on the evidence available, there is a general similarity of the design of the trade dress of the two products. This similarity is all the more significant considering that both companies' products will be sold, side by side, at Target, a mass retailer, and at a fairly low price point. *See id.* at 1541 (recognizing that the sale of a product "in a busy grocery store[] to hurried shoppers" must be considered in evaluating trade dress similarity). In sum, while the similarity of the trade dress here does not appear to be overwhelming, at least on this record, the presentation of the products nonetheless convey the same overall appearance. Viewed in context, the Court finds the similarity here militates, albeit moderately, in favor of a finding of a likelihood of confusion.

(d) *Enovation's Intent*

The Wineries maintain that the intent factor also indicates a likelihood of confusion. In support, they cite to the Stella Rosa brand's unparalleled success in the market, its numerous awards, and the volume of unsolicited press coverage that would make it virtually impossible for Enovation to be unaware of the product. (Pls.' Mot. at 17.) Based on the success of Stella Rosa and the similarities of the labels, it does not seem unreasonable to infer that Enovation intended to benefit from San Antonio's reputation in the market. Enovation does not offer any evidence to challenge this inference. Instead, it merely points to a list of reasons that could have theoretically motivated Enovation's design choices. On balance, then, the Court finds this factor too to weigh in favor of a finding, at least on this record, that Enovation, in fashioning the design of its label, intended to benefit from San Antonio's position in the market.

(e) *Actual Consumer Confusion*

Lastly, the Court looks to evidence of actual consumer confusion between the two products. Although actual consumer confusion is the best evidence of the likelihood of confusion, such evidence is not readily available here, where the alleged infringer's product has not yet made it to market. In any event, the Wineries have submitted there is evidence that a third-party competitor sent Enovation's Bella Rosa label and packaging to San Antonio because the competitor found it to be confusingly similar to the Stella Rosa label and

packaging. Further, during oral argument before the Court, the Wineries informed that a representative from Target had contacted San Antonio, inquiring as to the status of its shipment of Bella Rosa inventory—apparently failing to differentiate between the Bella Rosa products and the Stella Rosa products. While not overwhelming, the Court still finds an indication that the Wineries will likely be able to prove actual consumer confusion as discovery proceeds. Because of the dearth of evidence, however, at this stage of the litigation, the Court declines to afford this factor much, if any, appreciable weight.

After evaluating the seven factors, above, the Court finds, on the record before it, a substantial likelihood that the Wineries will succeed in demonstrating that Enovation's label and packaging of its Bella Rosa wines is confusingly similar to the Stella Rosa trade dress. Six of the seven factors weigh in favor, to varying degrees, of a likelihood of confusion: the Stella Rosa trade dress merits, at a minimum, moderate protection; the design of the trade dress of the products is at least somewhat similar; the products themselves are nearly identical; the retail channels and purchasers are identical; the marketing similarity is undisputed; and there is an indication of Enovation's intent to benefit from San Antonio's good will. Even though direct evidence of actual confusion is lacking, the Court's assessment of the other six factors leads it to find the Wineries have shown a likelihood of confusion between the two companies' products.

### (3) *Summary Regarding Likelihood of Success*

In sum, then, on the record now before the Court, it appears the Wineries have a substantial likelihood of success on the merits of San Antonio's trade dress infringement claims. This is based on (1) the Court's finding that the Wineries have demonstrated a substantial likelihood of showing that San Antonio's trade dress is inherently distinctive and that Enovation's trade dress is confusingly similar and (2) the lack of dispute regarding the non-functionality of San Antonio's trade dress.

### (4) *Enovation has not rebutted the Wineries' showing that it has established the remaining elements necessary to obtain a temporary restraining order.*

As the Wineries set forth, San Antonio is likely to suffer irreparable injury if the injunction is not issued. Without the injunction, the infringing Enovation products will appear in the marketplace, likely confusing consumers and therefore harming San Antonio's reputation. Further, the balance of potential harm to Enovation in restraining its trade in infringing products if the restraining order is issued is far outweighed by the potential harm to San Antonio's reputation and its good will as a producer, importer, and distributor of award-

winning and popular wine. And lastly, the public interest favors issuance of the restraining order to protect San Antonio's trade dress and to protect the public from being confused by different products that are confusingly similar.

**B. The Wineries have not carried their burden of demonstrating that Merritt is likely to succeed on the merits of its trademark claim.**

Even assuming Merritt has a protectable common law interest in the Bella Rosa mark, the Court finds the Wineries have failed to establish, on this record, a substantial probability of demonstrating a likelihood of confusion. The Court considers nearly the same seven factors, as set forth above, as it did in evaluating San Antonio's trade dress claim: (1) the strength of Merritt's mark; (2) the similarity of Merritt's and Enovation's marks; (3) the similarity of the parties' products; (4) the similarity of the parties' retail outlets and customers; (5) the similarity of advertising media used; (6) the existence of actual confusion; and (7) the defendant's intent. *Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989).

To begin with, the Court notes the likelihood of confusion is substantially weakened by several of these factors. First, Merritt's claim to protection of the Bella Rosa mark is severely circumscribed by numerous instances of other common law uses of the Bella Rosa brand. As Enovation points out, the following Bella Rosa brands have coexisted with Merritt's Bella Rosa for years: Bella Rosa, Paoletti Vineyards Calistoga, PA; Sangiovese Bella Rosa, Pope Valley, Napa Valley, CA; Bella Rosa Rose, Nillumbik Estate, Yarra Valley, CA; Sparkling Bella Rosa, Penguin Bay Finger Lakes, NY; Bella Rosa, Roessler, Pinot Noir, Sonoma County, CA; Bella E Rosa, Sorrell Winery, CA; Bella Rosa, Su Vino, Signature red wine, TX; Tesoaria Bella Rosa, Umpqua Valley, OR. (Def.'s Resp. at 4.) Further, two very similar names, unlike Merritt's marks, are subject to federal trademark registrations: "Su Bella Rosa" and "Bello Rosso." (*Id.*) The Court finds this "[e]xtensive third party use of the mark or a term used in the trademark weakens the strength of the mark." *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1329 (M.D. Fla. 2003), *aff'd sub nom. HBP, Inc. v. Am. Marine Holdings*, 129 Fed. App'x 601 (11th Cir. 2005).

Further detracting from the Wineries' claim is Merritt's admitted practice of always prominently displaying "Merritt Winery" alongside its Bella Rosa mark. Indeed, the way the marks are displayed on Merritt's bottle compared to Enovation's bottle greatly diminishes the concern of possible confusion. Merritt's "Bella Rosa" is italicized and printed with only initial capital letters while Enovation's is printed in all capitals, without italicization. Merritt's mark is printed in all black; Enovation prints "BELLA" in black and "ROSA" in red. A

side-by-side comparison of the bottles readily shows how dissimilar the displays of the marks are:



In addition to the distinctly contrasting appearances of the marks, the products themselves differ. Merritt's product is a red wine produced by a New York winery; Enovation's wine, on the other hand, is a sweet or semi-sweet, low alcohol, fizzy wine that is offered as both a red and a white varietal, and is imported from Italy.

Additionally, the likelihood of confusion between Merritt's product and Enovation's is further diminished by the different ways the two companies' wines are or are intended to be sold. "This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). The Wineries maintain that Merritt sells its Bella Rosa brand online. (Compl. ¶ 32; Pls.' Mot. at 16.) Presumably, if Merritt's wine is sold online, it is available across the United States—contrary to Enovation's contention that purchases of Merritt's wines are limited to New York alone. In any event, there are no allegations in the parties' briefing that Enovation's Bella Rosa will be available through the internet. (Pls.' Mot. at 16 (noting only that "*if* Defendant's wine is sold online, both would at least share the commonality of online sales via the internet") (emphasis supplied).) Indeed, the focus of the Wineries' motion for a temporary restraining order centers on the Wineries' concern that Enovation plans to sell its Bella Rosa varietals at Target stores. (Pls.' Mot. at 9, 16.) There is no allegation that Merritt's

wine, however, will ever be sold at Target. The chance of an overlapping customer base, then, though not completely absent, is nonetheless greatly diminished. Certainly, "the likelihood of confusion is reduced when the goods of the parties are sold to different classes of buyers through different channels of distribution, even when there is some similarity between the products." *Choice Hotels Intern., Inc. v. Kaushik*, 147 F. Supp. 2d 1242, 1251 (M.D. Ala. 2000), *aff'd sub nom. Choice Hotels Intern. v. Kaushik*, 260 F.3d 627 (11th Cir. 2001). The disparity in the sales channels then does not present very much of a concern that Enovation's Bella Rosa sales at Target will result in confusion with respect to Merritt's Bella Rosa.

The Wineries' further submissions regarding most of the remaining factors do not compel the court to perceive a likelihood of confusion either. The Wineries do not describe Merritt's marketing efforts and thus the Court cannot conclude this factor will result in a likelihood of confusion. Further, the Wineries' allegations regarding Enovation's intent is purely speculative and unpersuasive in light of the other factors: the differences between the products, where they are sold, and their readily distinguishable labels decrease the likelihood that Enovation intended to capitalize on Merritt's mark. The Wineries' attempt to show actual confusion also falls short. The Wineries summarily contend "[c]onsumer confusion is inevitable" because "Enovation does not have any other distinctive term or mark on its label" thus providing "no way for consumers to know [Enovation's] Bella Rosa is not Merritt Winery's Bella Rosa." (Pls.' Mot. at 17.) A quick visual comparison of the two products, however, belies the Wineries' overstated position.

On balance then, even if the Court were to agree with the Wineries that Merritt's mark is arbitrary, the Court would still conclude the Wineries have not set forth a substantial prospect of showing a likelihood of confusion between Enovation's and Merritt's Bella Rosa wines. The Court is persuaded that (1) there is extensive third-party use of the Bella Rosa mark, (2) the labels on Merritt's and Enovation's wines are readily distinguishable, especially considering Merritt's universally prominent display of the "Merritt Winery" name on all its Bella Rosa labels, and (3) there is little overlap between the sales channels of the wines. These findings combined with the Wineries' failure to show a marked similarity between the products, any similarity in the companies' marketing efforts, any actual confusion, or anything other than speculation regarding Enovation's intent, lead the Court to find the Wineries have not carried their burden in establishing that the "relevant consumers are likely to believe that the products . . . offered by the parties are affiliated in some way." *Custom Mfg. & Eng'g, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 650 (11th Cir. 2007) (internal quotation omitted). As a result, the Court finds the Wineries, at least on this

record, are unlikely to prevail on the merits of their claims that Enovation has infringed Merritt's mark.

### 4. Conclusion

Accordingly, the Court **grants in part and denies in part** the Wineries' motion for a temporary restraining order (**ECF No. 19**). Based on the foregoing analysis, the Court grants, on an expedited basis, the Wineries' request for a temporary restraining order against Enovation. The Court thus **enjoins** Enovation Brands, Inc., its officers, agents, servants, employees, and other people or entities in active concert or participation with them, from importing, selling, shipping, distributing or offering to sell its Bella Rosa wine, as identified and described in the complaint and this order, that the Court finds likely infringes San Antonio's Stella Rosa trade dress for its "Rosso" and "Moscato D'Asti" varietals. In accordance with 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), San Antonio shall post a $10,000 bond[2] as payment of damages to which Enovation may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further order of the Court. This restraining order shall remain in effect until such time as the Wineries' motion for a preliminary injunction, which the Court referred to United States Magistrate Judge Edwin G. Torres, can be more fully heard, considered, and determined. *S.E.C. v. Comcoa Ltd.*, 887 F. Supp. 1521, 1526 (S.D. Fla. 1995) (Highsmith, J.), *aff'd sub nom. Levine v. Comcoa Ltd.,* 70 F.3d 1191 (11th Cir. 1995) ("While TRO's cannot be extended indefinitely, they can be extended pending a ruling on a motion for a preliminary injunction.") (internal citations omitted). Conversely, the Court denies the Wineries' motion with respect to Merritt's trademark claim.

**Done and ordered** in chambers, at Miami, Florida, on February 24, 2020.

Robert N. Scola, Jr.
United States District Judge

---

[2] In its written response, Enovation did not object to this bond amount, suggested by the Wineries.